United States District Court
Southern District of Texas
**ENTERED**
September 20, 2017
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JUAN CONTRERAS, | § | |
| Movant, | § | |
| | § | |
| v. | § | Civil Action No. 1:13-cv-00083 |
| | § | (Criminal No. 1:02-cr-562-4) |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| Respondent. | § | |

## MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

Juan Contreras has filed a pro se Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (hereinafter, Contreras's "Motion" or "§ 2255 Motion"). Dkt. No. 1. The Government has filed an Amended Response and Alternative Motion to Dismiss (hereinafter, "Amended Motion"), arguing that Contreras's Motion should be dismissed for lack of merit. Dkt. No. 32. It is recommended that the Court: (1) construe the Government's Amended Motion as a combined motion to dismiss and motion for summary judgment; (2) grant the Government's Amended Motion to the extent it seeks dismissal of Contreras's second claim; (3) deny the Government's Amended Motion to the extent that it seeks dismissal of Contreras's first claim; and (4) grant Contreras's request for relief pursuant to his first claim and provide him with a remedy consistent with the Supreme Court's guidance in *Lafler v. Cooper*, 566 U.S. 156, 170-175 (2012) (providing sentencing courts guidance regarding "the question of what constitutes

an appropriate remedy."). In the alternative, it is recommended that the Court conduct its own evidentiary hearing and proceed pursuant to *Lafler's* guidance if the Court finds Contreras entitled to relief.

## I. Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 2255.

## II. Background and Procedural History[1]

On August 13, 2003, a jury found Contreras and three other co-defendants guilty of numerous drug trafficking crimes. *See United States v. Juan Contreras*, Criminal Action No. B-02-562-004, Dkt. No. 362 at 1-2 (Original Judgment of Conviction for violations of 21 U.S.C. § 846, § 841(a)(1), § 841(b)(1)(A), § 841(b)(1)(B); and 18 U.S.C. § 2, and § 924(c)).[2] Specifically, the jury found Contreras guilty of the following counts of his indictment.

| Count 1: | Conspiracy to Possess with Intent to Distribute a Quantity Exceeding 1,000 Kilograms of Marihuana, a Schedule 1 Controlled Substance; |
|---|---|
| Count 4: | Possession with Intent to Distribute 100 Kilograms or More of a Controlled Substance; |
| Count 5: | Possession with Intent to Distribute 100 Kilograms or More of a Controlled Substance, that is, Approximately |

---

[1] The Court has summarized the underlying facts and procedural history of this case in a previous Memorandum and Order. *See* Dkt. No. 15 at 1-3. Rather than recreate the wheel, the undersigned incorporates the relevant portion of the Court's Memorandum and Order into this Report and Recommendation.

[2] Hereinafter, Contreras's criminal case docket entries ("Cr. Dkt. Nos.") will be referred to only by their number.

| | | 132.8 Kilograms (292 pounds), Gross Weight, of Marihuana; |
|---|---|---|
| Count 6: | | Carrying a Firearm During the Commission of a Drug Trafficking Crime; |
| Count 7: | | Carrying a Firearm During the Commission of a Drug Trafficking Crime. |

Cr. Dkt. No. 362 at 1-2.  On February 11, 2004, the Court sentenced Contreras as follows:

| Counts 1, 4, 5: | 292 months of imprisonment and a five-year term of supervised release, to run concurrently; |
|---|---|
| Count 6: | 60 months of imprisonment and a three-year term of supervised release, to run consecutively; and |
| Count 7: | 300 months of imprisonment and a three-year term of supervised release, to run consecutively. |

*Id*. at 3.   In total, Contreras's aggregated sentence required him to serve 652 months in prison.  *Id*.  He was also ordered to pay a $500.00 special assessment.  *Id*. at 5.  Judgment was entered on February 20, 2004.  *Id*. at 1; *see also* Cr. Dkt. No. 385 (Amended Judgment for Correction of Clerical Mistake).

Contreras and his co-defendants appealed.   The Fifth Circuit Court of Appeals affirmed Contreras's judgment on December 7, 2007.  Cr. Dkt. No. 601 (Judgment); Cr. Dkt. No. 597 (Opinion).  The Supreme Court denied certiorari on June 9, 2009.  *See United States v. Jimenez*, 509 F.3d 682 (5th Cir. 2007*), cert. denied*, 553 U.S. 1101, 128 S.Ct. 2924, 171 L.Ed.2d 856 (2008).  On April 13, 2009, Contreras filed his first § 2255 motion.  Cr. Dkt. No. 719.  The Court rejected most of Contreras's grounds for relief, but granted his motion, finding that he was denied

effective assistance of counsel on appeal because his counsel (Larry Warner) had failed to raise a *Booker* claim pursuant to *United States v. Booker*, 543 U.S. 220, 233 (2005). *Contreras v. United States*, 682 F. Supp. 2d 771 (S.D. Tex. 2010).

The Government did not appeal. The Court resentenced Contreras on May 27, 2010, imposing 480 months of total imprisonment, rather than the original 652 months of imprisonment. Cr. Dkt. No. 766 (Amended Judgment upon Resentencing). The 480-month term consisted of: "120 months as to Counts 1, 4, and 5 to run concurrently to each other; 60 months as to Count 6 to be served consecutively to Counts 1, 4, and 5; and 300 months as to Count 7 to be served consecutively to Counts 1, 4, 5, 6[.]" *Id*. at 3. Contreras appealed, and the Court of Appeals affirmed on December 6, 2011. Cr. Dkt. No. 813 (Judgment); Cr. Dkt. No. 814 (Opinion). The Supreme Court denied certiorari on May 21, 2012. *United States v. Contreras*, 452 Fed. Appx. 538 (5th Cir. 2011*), cert. denied*, 132 S.Ct. 2443, 182 L.Ed.2d 1072 (2012).

Contreras filed his instant § 2255 Motion on May 2, 2013. Dkt. No. 1. Contreras's Motion raises two claims. In his first claim, he states that his trial counsel provided ineffective assistance of counsel during plea negotiations in light of the Supreme Court's recent decisions in *Lafler v. Cooper*, 566 U.S. 156 (2012), *Missouri v. Frye*, 566 U.S. 134 (2012), and *Alleyne v. United States*, ___U.S. ____, 133 S.Ct. 2151 (2013). *Id*. at 3. He contends that early in the proceedings he asked his counsel, Larry Warner, if the Government had made him a plea offer. Warner admitted that the Government had offered to recommend a ten-year sentence in

exchange for a guilty plea.  He states that Warner advised him not to accept the offer because the evidence against him was weak; and, even if he were found guilty, he was not likely to receive a sentence in excess of ten years.  *Id*. at 5.

Later, Contreras asked Warner if the Government had made any additional offers.  Warner told him that the same deal was on the table, but advised him not to accept the offer.  Warner stated that he was ready for trial and reiterated that Contreras would not likely receive a sentence in excess of ten years if they tried the case.  Contreras contends this advice prejudiced him.  Dkt. No. 1 at 5.

> Counsel never explained petitioner the adverse consequences he would face if found guilty.  Moreover, Counsel Warner failed to adequately appraise petitioner of the 924(c)(1) consecutive sentences of the firearm counts.  Such as, a consecutive sentence of five years on count six; and three hundred consecutive months of imprisonment for count seven.  The two firearm counts as charged could amount to a consecutive sentence of thirty years plus the time petitioner could face on the drug charge.

*Id*. (errors in original).  Contreras states that, had Warner correctly advised him regarding the potential sentences he could receive, he would have accepted the Government's plea offer.  Dkt. No. 1 at 8; Dkt. No. 14 at 4, 5; Dkt. No. 37 at 2.

In his second claim, Contreras relies upon *Alleyne v. United States*, 133 S.Ct. 2151 (2013), and asserts that he was improperly resentenced with respect to Counts 6 and 7 — carrying a firearm during the commission of a drug trafficking crime. Dkt. No. 1 at 9.  He contends that, because "there were two different punishments for the firearm count(s); it was an element to be proved to the jury beyond a reasonable doubt, not a sentencing factor to be proved to the judge at sentencing." *Id*. at 3 (errors in original).  He states that, in his case, "there was no jury finding"

with respect to Counts 6 and 7; therefore, he asks the Court to "vacate the judgment and conviction firearm enhancements due to the alleged weapons violations." *Id*. at 10 (errors in original).  *See also* Dkt. No. 37 at 8-12 (same).

The Government filed a motion to dismiss on August 12, 2013.  Dkt. No. 9. The Government claimed that jurisdiction was lacking and dismissal was proper pursuant to 28 U.S.C. § 2255(h) because Contreras had failed to obtain authorization from the Fifth Circuit Court of Appeals to file a second § 2255 motion. *Id*. at 1.  Contreras filed a reply on October 30, 2013.  Dkt. No. 14.  He argued that his instant Motion could not be treated as a second or successive motion because the Motion attacks his new May 27, 2010 judgment — the judgment he received after the Fifth Circuit remanded his case for resentencing.  *Id*. at 2-3.

After a full review of the record and the relevant case law, the Court found that Contreras's instant Motion was not successive, denied the Government's motion to dismiss, and ordered the Government to respond to Contreras's Motion. Dkt. No. 15 at 4-19.  The Government filed its Amended Motion on July 30, 2014. Dkt. No. 32.  In its Amended Motion, the Government asserts that Contreras's Motion should be dismissed because the two claims within the Motion lack of merit. *Id*.  After receiving an extension, Contreras filed a "Motion to [R]eply to the Prosecution's Amended Response and Alternative Motion to Dismiss" (hereinafter, "Contreras's "Reply").  Dkt. No. 37.  In support of his Reply, Contreras filed a signed, sworn affidavit and some additional exhibits.  Dkt. No. 37-1, 37-2, 37-3, 37-4.

The Court reviewed the parties' allegations and issued an order directing Warner to file a signed, sworn affidavit limited to addressing Contreras's claims concerning Warner's alleged ineffective assistance of counsel.  Dkt. No. 18.  Warner filed the requested affidavit, and argued that he did not provide Contreras with ineffective assistance.  Dkt. No. 26.  The Court reviewed Warner's affidavit in conjunction with the record and found that it could not determine the veracity of Contreras's allegations without an evidentiary hearing.  Dkt. No. 38.  The Court appointed attorney Gregory Sherwood to represent Contreras, and held an evidentiary hearing on June 6, 2016.  *Id*; Dkt. No. 61.  Warner and Contreras both testified at the hearing, and the Court allowed the parties to file additional supplemental briefing.  Dkt. No. 61 at 3, 70.[3]

On September 22, 2016, the Court notified the parties that it would treat the Government's Amended Motion as a motion for summary judgment as it pertained to Contreras's first claim.  Dkt. No. 67 at 1-2.  The Court directed Contreras to present any remaining evidence in support of his allegations, or move for production of that evidence.  Subsequently, Contreras filed, and the Court granted, Contreras's "Motion for Government to Produce Evidence Related to Terms of Plea Offer" (hereinafter, Contreras's "Motion for Production").  Dkt. Nos. 68, 70.  The Government's "Response to the Court's Order and Contreras' Motion to Produce Additional Evidence Related to Terms of Plea Offer" (hereinafter, the Government's "Response to Motion for Production") stated that it "had no additional evidence

---

[3]  The Court has considered all briefing, testimony, pleadings, motions, affidavits, and exhibits filed in this case, in conjunction with the record evidence in *United States v. Juan Contreras*, Criminal Action No. B-02-562-004.

relevant to the plea offer[.]"  Dkt. No. 69 at 1 (errors in original).  The Court additionally granted Contreras's "Request for Court to Consider Opinion in *United States v. Arredondo-Meza* (D. Idaho Sept. 29, 2016) as Supplemental Case Authority Regarding Movant's Ineffective Assistance Claims" (hereinafter, Contreras's "Motion to Supplement").  Dkt. Nos. 72 and 75.

## III.  Legal Standards

**28 U.S.C. § 2255**.  Pursuant to 28 U.S.C. § 2255, a defendant may move to vacate, set aside or correct his sentence if: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the district court was without jurisdiction to impose the sentence; (3) the sentence imposed was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255(a).  The nature of a § 2255 collateral challenge is extremely limited, being reserved for instances of constitutional or jurisdictional magnitude.  *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991).  If an error is not of constitutional magnitude, the movant must show that the error could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice.  *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994).

**Ineffective Assistance of Counsel.**  The "Sixth Amendment guarantees a[ll] defendant[s] the right to have counsel present at all 'critical' stages of the criminal proceedings" instituted against them.  *Missouri v. Frye*, 566 U.S. 134, 140 (citing *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009)).  Critical stages include not

only trial, but also pretrial proceedings — including the plea-bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012); *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). Even though sentencing does not concern the defendant's guilt or innocence, ineffective assistance of counsel during a sentencing hearing is also constitutionally impermissible. *Lafler*, 566 U.S. 156. The constitutional standard for determining whether a criminal defendant has been denied effective assistance of counsel at any of the critical stages mentioned above was announced by the Supreme Court in *Strickland v. Washington*:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. 668, 687 (1984).

In order to demonstrate that his attorney's performance was constitutionally deficient, a convicted defendant must show that counsel's representation "fell below an objective standard of reasonableness." *See Williams v. Taylor*, 529 U.S. 362, 390-91 (2000); *Darden v. Wainwright*, 477 U.S. 168, 184 (1986); *Strickland v. Washington*, 466 U.S. at 687-88; *Lackey v. Johnson*, 116 F.3d 149, 152 (5th Cir. 1997); *Andrews v. Collins*, 21 F.3d 612, 621 (5th Cir. 1994). A convicted defendant carries the burden of proof and must overcome a strong presumption that the conduct of his trial counsel falls within a wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 687-91; *Jones v. Cain*, 227 F.3d 228, 230

(5th Cir. 2000); *Green v. Johnson*, 160 F.3d 1029, 1036 n.1 (5th Cir. 1998); *Burnett v. Collins*, 982 F.2d 922, 928 (5th Cir. 1993).

In reviewing counsel's performance, the Court must be "highly deferential," making every effort "to eliminate the distorting effects of hindsight," and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution. *Id*. In order to establish that he sustained prejudice, the convicted defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Williams v. Taylor*, 529 U.S. 362, 391; *Strickland*, 466 U.S. at 694.

The prejudice prong of *Strickland* focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Williams*, 529 U.S. at 393 n. 17; *Strickland*, 466 U.S. at 692.

Because a convicted defendant must satisfy both prongs of the *Strickland* test, a failure to establish either deficient performance or actual prejudice under that test will ordinarily make it unnecessary to examine the other prong. *See*

*Strickland*, 466 U.S. at 700; *Ransom v. Johnson*, 126 F.3d at 716, 721 (5th Cir. 1997); *United States v. Seyfert*, 67 F.3d 544, 547 (5th Cir. 1995); *Armstead v. Scott*, 37 F.3d 202, at 210 (5th Cir. 1994). Therefore, failure to establish that counsel's alleged performance fell below an objective standard of reasonableness renders moot the issue of prejudice. *See United States v. Hoskins*, 910 F.2d 309, 311 (5th Cir. 1990); *Thomas v. Lynaugh*, 812 F.2d 225, 229-30 (5th Cir. 1987). It is also generally unnecessary to consider whether counsel's performance was deficient where there is an insufficient showing of prejudice. *See Black v. Collins*, 962 F.2d at 401; *Martin v. McCotter*, 796 F.2d 813, 821 (5th Cir. 1986).

**FED. R. CIV. P. 12(b)(6)**. Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must state a claim upon which relief can be granted or the complaint may be dismissed with prejudice as a matter of law. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss for failure to state a claim, well-pleaded facts must be accepted as true and viewed in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citing *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) and *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).

In *Katrina Canal Breaches*, the Fifth Circuit acknowledged the Supreme Court's abrogation of the "no set of facts" standard for determining the adequacy of a pleading:

> We have often stated that a claim should not be dismissed under Rule 12(b)(6) unless the plaintiff would not be entitled to relief under any set of facts or any possible theory he may prove consistent with the allegations in the complaint. *See, e.g., Martin K. Eby Constr.*, 369 F.3d

at 467 (quoting *Jones*, 188 F.3d at 324).  This standard derived from *Conley v. Gibson*, which stated that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957).  But recently in *Bell Atlantic*, the Supreme Court made clear that the *Conley* rule is not "the minimum standard of adequate pleading to govern a complaint's survival."  127 S.Ct. at 1968-69.

495 F.3d at 205 n.10.  To withstand a Rule 12(b)(6) motion, then, "the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.* at 205 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570-72, 127 S. Ct. 1955, 1974 (2007)).  This means that a complaint, taken as a whole, "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory[.]"  *Twombly*, 550 U.S. 544, 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984) (internal quotation marks omitted; emphasis and omission in original)).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. 544, 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 2944 (2007)).  "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)."  *Id.*  Although the Supreme Court in *Twombly* stressed that it did not impose a probability standard at the pleading stage, an allegation of a mere possibility of relief does not satisfy the threshold requirement of Rule 8(a)(2) that

the "plain statement" of a claim include factual "allegations plausibly suggesting (not merely consistent with)" an entitlement to relief. *Twombly*, 550 U.S. 544, at 557. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 684, 129 S.Ct. 1937, 1953 (2009) (rejecting the argument that the *Twombly* plausibility pleading standard applied only in antitrust cases and expressly holding the standard applies "all civil actions."). A court need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions[.]" *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) (citing *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

**Federal Rule of Civil Procedure 56.** The standard applied when ruling on a motion for summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure. FED. R. CIV. P. 56(a). In pertinent part, Rule 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*, *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986) (same). Mere allegations of a factual dispute between the parties will not defeat an otherwise proper motion for summary judgment. Rule 56 requires that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000), *cert. denied*, 531 U.S. 831, 121 S.Ct. 84 (2000). District courts considering motions for

summary judgment in ordinary civil cases are required to construe the facts in the case in the light most favorable to the nonmoving party.  *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255.  Additionally, courts must construe the pleadings of pro se litigants liberally.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

## IV.  Discussion

**Contreras's Second Claim**.[4]  As noted above, Contreras second claim relies upon *Alleyne v. United States*, 133 S.Ct. 2151 (2013) and asserts that he was improperly resentenced with respect to Counts 6 and 7 — carrying a firearm during the commission of a drug trafficking crime.  Dkt. No. 1 at 9.  He contends that, because "there were two different punishments for the firearm count(s); it was an element to be proved to the jury beyond a reasonable doubt, not a sentencing factor to be proved to the judge at sentencing."  *Id*. (errors in original).

> Petitioner contention is that, a imposition of 5 and 25 years running consecutive within each other, and consecutive with a drug count, was an element of the offenses and that as a result, the district court could not consider the mandatory minimum at a sentencing hearing unless the "firearm counts" was first found by a jury beyond a reasonable doubt.

Dkt. No. 37 at 10 (errors in original).  Contreras states that, in his case, "there was no jury finding" with respect to Counts 6 and 7.  Dkt. No. 1 at 10.  Therefore, he asks the Court to "vacate the judgment and conviction firearm enhancements due to the alleged weapons violations."  *Id*. (errors in original).  *See also* Dkt. No. 37 at 8-12 (same).

---

[4]  The Court will address Contreras's second claim first because it requires little discussion.

The Government contends that Contreras's reliance on *Alleyne v. United States* is misplaced for two reasons. First, the Supreme Court decided *Alleyne* after Contreras's amended judgment issued and *Alleyne* is not retroactively applicable. Dkt. No. 32 at 17-18. Second, *Alleyne* is immaterial because the jury did find Contreras guilty of the conduct alleged in Counts 6 and 7. Therefore, even if *Alleyne* were retroactive, it would not matter because *Alleyne's* holding does not apply to Contreras's case. *Id*. at 18-19.

The Government is correct. The Court entered Contreras's amended judgment of conviction and sentence on June 4, 2010. Cr. Dkt. No. 766 at 1. The Supreme Court decided *Alleyne* on June 17, 2013. *Alleyne*, 133 S.Ct. 2151. In brief, the Supreme Court in *Alleyne* held that "any fact that increases a defendant's mandatory minimum sentence must be submitted to the jury and proved beyond a reasonable doubt." *In re Kemper*, 735 F.3d 211, 212 (5th Cir. 2013) (citing *Alleyne*, 133 S.Ct. 2151, at 2163). However, the Supreme Court did not hold that *Alleyne* applies retroactively on collateral review. *Id*. The Fifth Circuit has since made clear that *Alleyene* does not apply retroactively. *United States v. Olvera*, 775 F.3d 726, 730 (5th Cir. 2015) ("We reiterate that *Alleyne* does not apply retroactively.").

More importantly, the jury found Contreras guilty of the conduct charged in Counts 6 and 7 of his indictment. Cr. Dkt. No. 260 at 1. Specifically, the jury found that, on two different occasions (February 15, 2001, and February 22, 2001), Contreras had carried a firearm during the commission of a drug trafficking crime. *Id*; Cr. Dkt. No. 1 at 4; Cr. Dkt. No. 362 at 1-2; Cr. Dkt. No. 771 at 5. The jurors

reached this finding after the Court properly instructed them regarding the elements of 18 U.S.C. § 924(c)(1).  Cr. Dkt. No. 249 at 11-12.  Thus, although United States District Judge Hilda Tagle did impose Contreras's sentence under 18 U.S.C. § 924(c), she did not find Contreras guilty of the elements of § 924(c) because those findings were made by the jury.  Contreras's second claim is belied by the record and lacks merit.  To the extent that the Government's Amended Motion seeks dismissal of Contreras's second claim, then, the Government's Amended Motion should be granted.

**Contreras's First Claim**.  As noted above, Contreras alleges that his trial counsel provided ineffective assistance during plea negotiations in light of the Supreme Court's decisions in *Lafler v. Cooper*, 566 U.S. 156 (2012), *Missouri v. Frye*, 566 U.S. 134 (2012), and *Alleyne v. United States*, 133 S.Ct. 2151 (2013).  Dkt. No. 1 at 3.  He contends that early in the proceedings he asked Warner if the Government had made him a plea offer.  Warner admitted that the Government had offered to recommend a ten-year sentence in exchange for a guilty plea.[5]  He states that Warner advised him not to accept the offer because the evidence against him was weak; and, even if he were found guilty, he was not likely to receive a sentence in excess of ten years.  *Id*. at 5.

Later, Contreras asked if the Government had made any additional offers. Warner told him that the same deal was on the table, but advised him not to accept

---

[5]  As will be detailed below, the record evidence indicates that the Government's offer required Contreras to plead guilty to Count 1, and possibly another count.  The offer also required Contreras to debrief and testify against his codefendants, including his wife's sister's husband, Jose Alfredo Jimenez.  In exchange, the Government would dismiss the remaining counts in the indictment and recommend a ten-year term of imprisonment.

the offer.  Warner stated that he was ready for trial and reiterated that Contreras would not likely receive a sentence in excess of ten years if they tried the case. Contreras contends this advice prejudiced him because he is now serving a mandatory minimum 40-year term of imprisonment; and, before remand and resentencing, his term of imprisonment was in excess of 54 years.  Dkt. No. 1 at 5. His current sentence of 40 years is composed of "120 months as to Counts 1, 4, and 5 to run concurrently to each other; 60 months as to Count 6 to be served consecutively to Counts 1, 4, and 5; and 300 months as to Count 7 to be served consecutively to Counts 1, 4, 5, 6[.]"  Cr. Dkt. No. 766 at 3.  Contreras asserts that Warner never told him he was facing a minimum five-year consecutive sentence if convicted under Count 6, and a minimum consecutive sentence of 25 years if convicted under Count 7.  Dkt. No. 1 at 5.  Contreras states that, had Warner correctly advised him regarding the potential sentences he could receive, he would have accepted the Government's plea offer.  Dkt. No. 1 at 8; Dkt. No. 14 at 4, 5; Dkt. No. 37 at 2.

The Sixth Amendment right to effective assistance of counsel requires that counsel be effective during the plea bargaining process.  *Padilla v. Kentucky*, 559 U.S. 356, 373.  Advising a defendant to accept or reject a plea offer is a critical component of a defense attorney's role.  *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004).  "[T]he Sixth Amendment protects against, and remedies, the rejection of favorable plea offers for want of effective assistance of counsel."  *United States v. Rivas-Lopez*, 678 F.3d 353, 357 (5th Cir. 2012) (citing *Lafler v. Cooper*, 566

U.S. 156, 164; *Missouri v. Frye*, 566 U.S. 134, 145; *Beckham v. Wainwright*, 639 F.2d 262, 267 (5th Cir. Unit B Mar. 1981)).  A defendant establishes a violation of his Sixth Amendment rights when he shows that his counsel's performance was deficient, and that he suffered prejudice as a result.  *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687).

In order to demonstrate that his attorney's performance was constitutionally deficient, a convicted defendant must show that counsel's representation "fell below an objective standard of reasonableness."  *Williams v. Taylor*, 529 U.S. 362, 390-91. A convicted defendant carries the burden of proof and must overcome a strong presumption that the conduct of his trial counsel falls within a wide range of reasonable professional assistance.  *Strickland*, 466 U.S. at 687-91; *Jones v. Cain*, 227 F.3d 228, 230; *Green v. Johnson*, 160 F.3d 1029, 1036 n.1; *Burnett v. Collins*, 982 F.2d 922, 928.  In reviewing counsel's performance, the Court must be "highly deferential," making every effort "to eliminate the distorting effects of hindsight," and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.

In order to establish that he sustained prejudice, the convicted defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Williams v. Taylor*, 529 U.S. 362, 391; *Strickland*, 466 U.S. at 694.  To

satisfy the prejudice prong where a defendant rejects a favorable plea offer due to the ineffective assistance of their counsel, the defendant must show that:

> "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." [*Lafler v. Cooper*, 566 U.S. 156, 164]. Any amount of additional jail time is significant for purposes of showing prejudice.

*United States v. Rivas-Lopez*, 678 F.3d 353, 357 (citing *Glover v. United States*, 531 U.S. 198, 203 (2001); *Frye*, 566 U.S. 134, 147; *United States v. Grammas*, 376 F.3d 433, 438). *But see Woods v. State*, 48 N.E.3d 374, 381–83 (Ind. Ct. App. 2015) ("The *Lafler* decision is silent regarding the defendant's burden to show that the trial court would have accepted the proposed plea agreement. Thus, to the extent *Frye* imposes such a burden, there is no discussion of any evidence in support of that showing in *Lafler,* which was handed down the same day as *Frye*.").

When determining whether a defendant would have received a more favorable sentence, had he accepted a particular plea offer, the court must assume that the sentencing court would have "reasonably, conscientiously, and impartially" applied "the standards that govern the decision." *Strickland v. Washington*, 466 U.S. 668, 695. "Thus, evidence about the actual process of decision, if not part of the record of the proceeding under review, and evidence about, for example, a particular judge's sentencing practices, should not be considered in the prejudice determination." *Id.*

**(A)  Warner's Performance.**   In his affidavit, Warner denies Contreras's clams and states that he provided Contreras with effective assistance of counsel. *See generally* Dkt. No. 26.  In relevant part, Warner states as follows:[6]

1.   During plea negotiations, Assistant United States Attorney Jody Young "indicated that if Contreras would plead guilty, the government would recommend ten years' confinement, and that the government wanted Contreras to testify against the other defendants, including the Constable [Jose Alfredo Jimenez]."  Dkt. No. 26 at 3.  I promptly explained the offer to Contreras, but Contreras rejected the offer.  *Id.* at 4.  Contreras stated he would not testify against Jimenez, or anyone else.

2.   When I informed Young that Contreras would not testify, Young told me to tell Contreras that, "if Contreras ever wanted to see [his] young child again before the child was old, Contreras had better take the deal because the government was going to bury Contreras."  No. 26 at 4.

> I explained Mr. Young's attitude to Mr. Contreras.  I noted that there were many counts in the indictment and that the government would try to cumulate sentences in the event of a conviction.  I noted that if he accepted the deal, he would probably have to serve 85% of the term and that since he was a [deputy], we would be protected in the federal system, perhaps by placement in a separate facility or wing.

> At the time of the trial, I had practiced law for thirty years.  It is simply not true that the outcome of pleading guilty in federal court as compared to going to trial and being found guilty are the same.  At the time of trial, [*United States v. Booker*, 543 U.S. 220 (2005)] had not been decided.  The Guidelines were mandatory.  People got reductions for pleading early.  They got reductions for cooperation.  I would never

---

[6]  The Court paraphrases Warner's affidavit here in places for the sake of brevity.

have said anything like the outcomes 'would be about the same' and I did not say that in this case.

*Id.* at 4-5.

3.  I "explained the problem of the firearm counts to Mr. Contreras as well as the prospect of cumulation." Dkt. No. 26 at 6 (errors in original).[7]  I did not believe that 18 U.S.C. § 924(c) was applicable to the facts of Contreras's case under the law of the Seventh, Ninth, and Tenth Circuits because Contreras had not carried a firearm during or in relation to a drug trafficking crime.  Instead, Contreras merely had a firearm on his person because it was a part of his police uniform.  *Id.*  I filed a motion regarding the position of the Seventh, Ninth, and Tenth Circuits in Contreras's case before he was sentenced.[8]  I informed Contreras that the Fifth Circuit would not adopt the view of the Seventh, Ninth, and Tenth Circuits because the Fifth Circuit "was very strict[.]"  *Id.*

4.  I "was not ignorant of the consecutive nature of the firearm counts." Dkt. No. 26 at 17.  I told Contreras that "the gun counts would surely be cumulated if he were convicted."  *Id.*

> I had represented people in federal court in cases in which firearms were alleged in the indictment before I represented Mr. Contreras.  I remember because the trial was in the old federal courthouse on Elizabeth Street and Mr. Lara was the prosecutor.  Mr.

---

[7]  Warner's use of the word "cumulation" to describe the prospect of consecutive sentences is somewhat confusing.  To cumulate means: (1) "to combine into one," or (2) "to gather or pile in a heap," or (3) "to build up by addition of new material.  *See* https://www.merriam-webster.com/dictionary/cumulate (last visited on September 18, 2017).  The word consecutive is defined as "following one after the other in order."  *See* https://www.merriam-webster.com/dictionary/consecutive (last visited on September 18, 2017).  The two definitions are not synonymous.

[8]  Warner quotes from the text of this motion in his affidavit.  *See* Dkt. No. 26 at 7-15.

Contreras' trial took place in the new federal courthouse on East
Harrison Street, which courthouse was not constructed until after the
Elizabeth Street trial was over.  I was aware of the consequences of a
firearms finding.  I explained those consequences to Mr. Contreras
including the prospect of cumulation.  I noted that while the circuits
might disagree, taking the matter to the Supreme Court would be an
extraordinary expenditure of time and resources and might not be
successful, simply because all recourse to the Supreme Court by
individual litigants was discretionary, and even so, the stricter view
might prevail, appeal by individuals having been abolished and
relegated to discretionary petitions for certiorari. . . .

*****

I told Mr. Contreras, "This is not a possession of marijuana case.  This
is a public corruption case."  If you are convicted, the judge sets the
sentence, not the jury.  She is very strict.  The sentence will be severe.
They have you alone in a car with three bales of marijuana in the
trunk, fainting when you are accused of this crime.  The prosecutor has
promised to bury you if you do not take the deal.  The gun counts get
cumulated on conviction.  He knows you have a young child.  He said
your child will be long grown before you see your child again if you do
not take the deal.   You need to consider this very carefully and
seriously.  The risk of a severe sentence is serious if you are convicted.
If the government recommends ten years, the judge does not have to do
that, but she probably would, since that would probably prompt the
others to plead as well. . . .

*****

I explained to Mr. Contreras that any sentences on the gun counts
would surely be cumulated and could be quite severe.  The Fifth
Circuit had held that all the government had to prove was that the
defendant was involved in a drug crime and that he had a gun.  **U.S. v.
Brown**, 257 (5th Cir. 1998) (en banc).  He did not want to testify
against the others, did not want to testify against the constable, did
not want to take ten years, did not want to plead guilty, and did want
to go to trial.

*Id.* at 15-17 (errors and emphasis in original).

At the evidentiary hearing, Warner continued to insist that, while counseling

Contreras regarding the plea offer, he believed that he had correctly advised

Contreras regarding the sentences Contreras faced if convicted under Counts 6 and 7. Dkt. No. 61 at 15-16. Nevertheless, Warner also testified that he could not specifically recall telling Contreras about the statutory minimum 25-year sentence that would apply if Contreras were convicted under Counts 6 and 7. Dkt. No. 61 at 16.

> And after we'd gone over all his rights and all that the Government had to prove in his -- in the indictment, we discussed the risks. Look, you know, this is serious business. You could get a life sentence in this case. And, look, they've got a gun. Okay, well, look, I'm familiar with the law on guns, all right? The Ninth Circuit says, oh, gee whiz, you were on duty so we're not going to hold it against you that you had a gun, and you might be eligible for the safety valve. Well, the Fifth Circuit doesn't see it that way. And there was more than one count. And the gun counts could be stacked and they're going to stack them on top. It has to be stacked, it can't run concurrent with the substantive count, and it's a -- you know, there's a five-year minimum stacking the gun counts. I read your application. Judge, I just do not remember if I told him that the maximum number on the gun counts was 25 to be stacked on top of the other sentence. But I always go over -- my habit since I started this is to go over the statute. I can't tell you that I remember telling him about the 25 years. I can't tell you that. But I can tell you him -- tell you that I told him, look, you're looking at life, buddy, you'd better seriously consider this. You'd better consider this deal because they can stack the gun counts on top of it. And I do go over the statute with them in every case, not just the indictment, the statute, including the one that shows, you know, the prospect of a 25-year sentence. I don't remember that independently but I'm sure that I went over the statute with him.

*Id.* (formatting altered). *See also id.* at 29.

Subsequently, Warner testified that he was not certain he discussed 18 U.S.C. § 924(c) with Contreras prior to trial. Dkt. No. 61 at 23 ("Q  And you've testified that you are sure that you discussed the statute with your client, but in your supporting -- A  No, no, no, that's not what I said."). Qualifying his earlier

testimony, Warner stated that it was merely his practice to advise his clients regarding the statutory offenses charged in their indictments. *Id*. at 23-34. Still later, Warner indicated that he did not have any doubts as to whether he had correctly counseled Contreras. *Id*. at 33 ("But I don't have any doubt about I always go over his rights, I always go over the indictment, and I always go over the statute.") (errors in original).

Although Warner's affidavit and hearing testimony fall short of specifically stating that he advised Contreras regarding the mandatory minimum consecutive sentences Contreras could face pursuant to § 924(c), if he did not accept the Government's plea offer, Warner's affidavit and testimony both suggest that he properly advised Contreras on the subject. Warner's suggestion here is contradicted by the record. Excepting supervised release terms, and focusing only on Contreras's terms of imprisonment, the District Court originally sentenced Contreras as follows:

Counts 1, 4, 5:    292 months of imprisonment, to run concurrently;

Count 6:    60 months of imprisonment, to run consecutively; and

Count 7:    300 months of imprisonment, to run consecutively.

Cr. Dkt. No. 362 at 3. After Contreras's appeal, and upon remand, the Court resentenced Contreras, imposing 480 months of total imprisonment, rather than the original 652 months of imprisonment. Cr. Dkt. No. 766 (Amended Judgment upon Resentencing). Excepting supervised release terms, and focusing only on Contreras's terms of imprisonment, the Court resentenced Contreras as follows:

Counts 1, 4, 5:    120 months of imprisonment, to run concurrently;

Count 6:          60 months of imprisonment, to run consecutively;
                  and

Count 7:          300 months of imprisonment, to run consecutively.

Cr. Dkt. No. 766.   Because the jury had found Contreras guilty of the conduct charged in Counts 6 and 7 (*see* Cr. Dkt. No. 260 at 1; Cr. Dkt. No. 362 at 1-2), Section 924(c) of Title 18 required the Court to impose a minimum consecutive 60-month (5-year) term of imprisonment for Count 6, and a minimum consecutive 300-month (25-year) term of imprisonment for Count 7.   *See* 18 U.S.C. § 924(c)(1)(A)(i) and § 924(c)(1)(C)(i).

The Presentence Investigation Report ("PSR"), prepared by the United States Probation Officer Luis S. Lopez on September 18, 2003, incorrectly reported the minimum sentences required under 18 U.S.C. § 924(c)(1)(A)(i) and § 924(c)(1)(C)(i). Cr. Dkt. No. 318 at 2.   Specifically, the PSR stated that the "maximum term of imprisonment for Counts 6 and 7 is mandatory five (5) years consecutive to the underlying offence pursuant to 18 U.S.C. § 924(c).   *Id*. at 19, ¶ 91 (errors in original).

On January 21, 2004, Warner filed objections to the PSR, stating that "the sentences on the gun counts should not be cumulated."   Cr. Dkt. No. 326 at 4.   A few days later, on January 29, 2004, Warner filed an "Unopposed Motion for Leave to File Additional Objection" (hereinafter, Warner's "Motion to File Additional Objections").   Cr. Dkt. No. 328.   In this Motion to File Additional Objections, Warner stated as follows:

On January 20, 2004, Mr. Warner spoke to Luis L. Lopez, who wrote the PSR. Mr. Lopez told Mr. Warner that he thought the court was supposed to cumulate the sentences on the Firearm Counts. The next day Mr. Warner filed this objection: . . .

In paragraph sixty-five (65) [of the PSR] it does say "the penalty required by statute, in this matter, is five years' imprisonment to run consecutive to the sentence imposed for the underlying offense." It does not say that if there are two five-year sentences, they have to be added to each other. So Mr. Warner was not sure what the PSR writer's position was until after talking to him personally on January 20, 2004.

In paragraph ninety-one it says that "the maximum term of imprisonment for Counts six (6) and seven (7) is mandatory five-years consecutive to the underlying offense, pursuant to 18 U.S.C. § 924(c)." It does not say the two (2) counts' sentences must be consecutive to each other. All the PSR says is that these is a mandatory five year sentence pursuant to each count. It does not say whether the two five year sentences are concurrent or consecutive with each other.

*Id*. at 1-2 (errors in original, formatting altered). On the same day, Warner filed a "Memorandum in Support" of his Motion to File Additional Objections. Cr. Dkt. No. 329. In this Memorandum, Warner argued that his objection to the PSR addressed an "interpretation of a statute requiring that the five-year minimum on each gun count be added to the substantive count." *Id*. at 6. He asserted that the "question is whether the two five-year counts must be added to each other." *Id*.

After Warner objected and argued that the two "five-year terms" should not be added together, the Probation Officer "undertook an additional review of the statute and found that, pursuant to 18 U.S.C. § 924(c)(1)(C)," Contreras was facing a minimum 25-year sentence for the Count-7 charge. Cr. Dkt. No. 332 at p. 42. The Probation Office then issued its Final Presentence Investigation Report ("FPSR"). *Id*. The FPSR stated that the mandatory minimum sentence required for Count 6

was a 5-year consecutive sentence, and the mandatory minimum sentence required for Count 7 was a 25-year sentence. *Id*. at 42. In responding to Warner's objections, the Government also stated that the mandatory minimum sentence required for Count 6 was a 5-year consecutive sentence, and the mandatory minimum sentence required for Count 7 was a 25-year sentence. Dkt. No. 334 at 3.

Warner's objections to the initial PSR indicate that, right up until sentencing, Warner believed that Contreras was only facing a consecutive 5-year sentence if convicted under Count 6, and a five-year sentence if convicted under Count 7. *See* Cr. Dkt. No. 326 at 4 (arguing that the two "five-year" sentences applicable under Counts 6 and 7 should not be consecutive); Cr. Dkt. No. 328 (same); Cr. Dkt. No. 329 at 6 (same). His testimony to the contrary lacks credibility. In addition to being vague, his testimony was inconsistent, evasive, and undermined by his lack of recall. Conversely, Contreras's testimony on the subject at the evidentiary hearing was both consistent and credible. *See* Dkt. No. 61 at 44-46, 48, 50, 58-59, 68.

"Where a defendant persists in a plea of not guilty, counsel's failure to properly inform him about potential sentencing exposure may constitute ineffective assistance." *United States v. Rivas-Lopez*, 678 F.3d 353, 357. Here, at a minimum, the evidence in the record shows that Warner failed to inform Contreras that he would face a mandatory minimum consecutive 25-year sentence if convicted under Count 7, if he was also convicted under Count 6. The statutory provisions applicable to Counts 6 and 7 when Contreras was convicted and sentenced were

clear and unambiguous with respect to punishment.[9]   The jury found Contreras

guilty on August 13, 2003, for carrying a firearm during the commission of drug

trafficking crimes on two different occasions in 2001.   *See* CR. Dkt. No. 260 at 1

(Jury Verdict); Cr. Dkt. No. 1 at 4 (Indictment specifying the nature and dates of

acts committed).   Since at least November 13, 1998 until the present, Sections

924(c)(1)(A)(i) and 924(c)(1)(C)(i) of Title 18 have provided as follows:

> (c)(1)(A) Except to the extent that a greater minimum sentence is
> otherwise provided by this subsection or by any other provision of law,
> any person who, during and in relation to any crime of violence or drug
> trafficking crime (including a crime of violence or drug trafficking
> crime that provides for an enhanced punishment if committed by the
> use of a deadly or dangerous weapon or device) for which the person
> may be prosecuted in a court of the United States, uses or carries a
> firearm, or who, in furtherance of any such crime, possesses a firearm,
> shall, in addition to the punishment provided for such crime of violence
> or drug trafficking crime—
>
> > (i) be sentenced to a term of imprisonment of not less than
> > 5 years; . . . .
>
> (C) In the case of a second or subsequent conviction under this
> subsection, the person shall—
>
> > (i) be sentenced to a term of imprisonment of not less than
> > 25 years[.]

*See* 18 U.S.C. § 924(c)(1)(A)(i) and § 924(c)(1)(C)(i) (West, 1998) through 18 U.S.C.

§ 924(c)(1)(A)(i) and § 924(c)(1)(C)(i) (West, 2006).   Warner's failure to correctly

inform   Contreras   regarding   the   consecutive   sentences   he   faced   under

§ 924(c)(1)(A)(i) and § 924(c)(1)(C)(i) constitutes ineffective assistance because it fell

---

[9]  Warner's presentencing arguments that 18 U.S.C. § 924(c) should not apply to Contreras
because his carrying a gun was incidental and part of his uniform are beside the point.   The
jury convicted Contreras under Counts 6 and 7, and Contreras's indictment charged him
under 18 U.S.C. § 924(c).   Therefore, Warner had a duty to correctly advise Contreras
regarding the sentences he could face under § 924(c), if convicted under Counts 6 and 7.

below an objective standard of reasonableness. *See United States v. Herrera*, 412 F.3d 577, 581 (5th Cir. 2005) (citing *Teague v. Scott*, 60 F.3d 1167, 1171 (5th Cir. 1995) for the proposition that, counsel performs deficiently in underestimating his client's sentencing exposure, even "by 27 months," because in doing so he fails to "provide his client with the information needed to make an informed decision about accepting a plea offer or going to trial.").

**(B) Contreras's Prejudice**.  Nevertheless, Contreras may not obtain § 2255 relief unless he meets his burden to show that Warner's ineffective assistance caused him to suffer prejudice.  To establish prejudice, Contreras must satisfy four factors identified in *Lafler v. Cooper* (hereinafter, the *"Lafler* factors").  *See Lafler*, 566 U.S. 156 at 164.  Specifically, Contreras must show that, but for Warner's ineffectiveness, there is a reasonable probability that: (1) he would have accepted the plea offer; (2) the plea offer would have been presented to the court; (3) the court would have accepted the terms of the offer; and, (4) "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id*; *United States v. Rivas-Lopez*, 678 F.3d 353, 357 (same).

Addressing the fourth *Lafler* factor first, Contreras testified that the Government's plea offer required him to plead guilty, debrief, and testify against the others.  Dkt. No. 61 at 49.  In exchange, his understanding was that the Government would recommend a sentence of 10 years for "everything."  *Id*. at 42.

> Q:  All right, and what was the plea offer that the Government made that Mr. Warner relayed to you in this conversation?
>
> A:  That they were -- that it was a ten-year plea and I had to testify.
>
> Q:  And following up on the Court's question, was this for Count One only, for Counts One -- for several counts, were any counts to be dismissed?  Do you recall those specifics?
>
> A:  He never actually told me.  From my understanding from the way that it was, I thought it had included everything.

*Id*. at 41-42 (formatting altered).

Warner's testimony regarding the plea offer is largely consistent with Contreras's testimony.   *Id*. at 13, 36-37.   Warner stated that the Government offered to recommend that Contreras serve a 10-year sentence.   *Id*. at 13 ("the [prosecution] said, if [Contreras] will plead guilty -- we didn't get down to which counts, but certainly the first one, the possession count -- and if [Contreras] will debrief, and if [Contreras] will testify against the others, then we will be in a position to recommend ten years.")  When asked whether the Government required Contreras to plead guilty to any specific counts, Warner stated:

> I thought it was to two counts but I'm sure that one of the counts was Count One because it had a mandatory minimum of ten, I think.  But, I mean, it was the Government's offer.  I think that he was supposed to plead to two counts but the Government's file and Mr. Young would be in a better position to remember precisely what the offer was.

*Id*. at 36-37.

Despite having the opportunity to do so, the Government has produced no evidence to contradict Warner and Contreras's testimony here.   *See* Dkt. Nos. 68-70. According  to  the  terms  of  the  plea  offer,  then,  the  Government  would  have

dismissed all counts excepting Count 1, or excepting Counts 1, 4, and/or 5, so that it would be in a position to honor its agreement and recommend a 10-year sentence.[10] Although it is true that the Court may have imposed a sentence in excess of 10 years, despite the Government's recommendation, Contreras need only show, by a reasonable probability, that his conviction or sentence would have been less severe than his current sentence. *See Lafler*, 566 U.S. 156, 164 ("the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.").

He has done that here. Under the terms of the plea offer, the Government would have dismissed some of the counts charged in his indictment — specifically, Counts 6 and 7, at a minimum. Thus, his judgment of conviction would necessarily have been less severe. Additionally, under the terms of the plea offer, he faced a statutorily-imposed mandatory minimum 10-year term of imprisonment. After rejecting the offer and proceeding to trial, he faced a statutorily-imposed mandatory minimum 40-year term of imprisonment. Contreras has met his burden under the fourth *Lafler* factor. *See id*. at 161-162, 164-170 (prejudice shown where defendant's rejection of plea offer, which would have resulted in the dismissal of some charges and a mandatory minimum sentencing range of 51 to 85 months,

---

[10] The minimum term of imprisonment for Count 4 was a concurrent five year term, as was the minimum term of imprisonment for Count 5. *See* Cr. Dkt. No. 318 at 19, ¶ 91. Thus, the Court could have accepted a plea of guilty on Counts 1, 4, and 5 and still sentenced Contreras to 10 years of imprisonment. Conversely, the Government would not be in a position to recommend a 10-year term of imprisonment if it required Contreras to plead guilty to Count 6, or Count 7, or both. Had Contreras pleaded guilty to Counts 1 and 6, for example, the Government would have been able to recommend a sentence of no less than 15 years because a conviction under Count 1 would require a minimum sentence of 10 years, and a conviction under Count 6 would require a minimum consecutive 5-year sentence.

caused defendant to go to trial and be subjected to a mandatory minimum sentencing range of 185 to 360 months).

With respect to the first factor, Contreras credibly testified at the evidentiary hearing that, prior to sentencing, Warner did not inform him that he would face a minimum consecutive 25-year sentence if convicted Count 7, if he was also convicted under Count 6. *See* Dkt. No. 61 at 44-46, 48, 50, 58-59, 68. Contreras also stated that Warner never told him he could receive a life sentence if convicted under Count 1. *Id*. at 45.

> A . . . . Somewhere along the line we came up to what am I looking at, worst case scenario, if we went to trial. He told me worst case scenario what you're looking at is 15. He says there's not much of a difference. And I remember because I told him, I said, 15? I said, hold on, these guys are offering me ten and now you're telling me an extra five. Where do we get the extra five from? He says that comes from the gun. He says, but if we take it to trial, you lose, you still don't have to testify. I was like, and they're offering me ten. I said, so ten's guaranteed. And he told me ten's not guaranteed, it depends on the judge, the judge can give you less than ten, the judge can give you the ten, or the judge can give you over ten. He says where like I tell you, not much difference.
>
> Q: Did Mr. Warner ever tell you that you were facing a punishment range of ten years to life on the Count One, the drug conspiracy count?
>
> A: No, sir.
>
> Q: Did you ever hear any discussion that you were facing a life sentence before trial?
>
> A: No, sir.
>
> Q: So your testimony is you thought you were facing ten to 15 years if you went to trial and you lost.
>
> A: Yes, sir.

Dkt. No. 61 at 45 (formatting altered).   Contreras also testified that he never told Warner he would not testify against the others.  *Id.* at 49.  He stated, credibly, that he would have accepted the Government's plea offer, had he known he could receive "ten years for the drug count, plus five years for the first gun count, plus 25 years for the second gun count[.]"  *Id.* at 48.  More specifically, Contreras stated that he would have pleaded guilty, testified against Jimenez and the others, and debriefed, had he known that he was facing the mandatory minimum 40-year sentence he is currently serving.  *Id.* at 48-49.

The only evidence the Government has produced to refute Contreras's testimony here is Warner's testimony.  Warner claimed that he specifically told Contreras that if he did not take the plea offer, he could get a life sentence.  Dkt. No. 61 at 15-16, 29.  Because Contreras risked serving a life sentence, Warner contends that he encouraged Contreras to seriously consider the Government's offer.  *Id.* at 16 ("I told him, look, you're looking at life, buddy, you'd better seriously consider this.").  Warner also insisted that Contreras was unwilling to testify and was aware of the fact that he could receive a life sentence if he did not take the plea offer because Warner reviewed Contreras's indictment with him and informed him of the statutory provisions applicable to him under each count of the indictment.  *Id.* at 15-17, 29.

Although Warner's testimony on these points was credible in places, Warner has not specifically claimed that he informed Contreras that he would receive a minimum, mandatory sentence of 40 years if convicted on all counts.  This is critical

because Contreras credibly testified that he would have accepted the Government's plea offer, with all of its terms, had he known that he faced the minimum mandatory 40-year sentence that he is currently serving.  *Id*. at 48-49.  The undersigned finds that Contreras has shown, by a reasonable probability, that he would have accepted the Government's plea offer, had Warner correctly informed him regarding the consecutive, mandatory minimum sentences he faced if convicted at trial.

With respect to the last two *Lafler* factors, Contreras suggests that the terms of the plea agreement would have been presented by the Government and accepted by the Court (Dkt. No. 1 at 8), but his factual support for this suggestion is somewhat underwhelming.  This is not that surprising.  Demonstrating what would have happened, if something else, which did not occur, had happened, to a reasonable probability, is not the lightest of burdens.

Still, the Government has not contested: (1) Contreras's testimony regarding the existence of the offer; (2) his testimony concerning the terms of the offer; (3) Warner's testimony that the Government made the offer after discovery was complete, and after he had filed pretrial motions; or (4) Contreras's credible testimony indicating that the Government did not withdraw the offer because the offer remained the same.  Dkt. No. 61 at 13, 42, 43, 44.  Further, Contreras has admitted his guilt.  Dkt. No. 61 at 56 ("I'm not saying I'm innocent, I know I'm guilty").   Given his role in the crimes charged and his knowledge of his codefendants' actions (*see* Cr. Dkt. No. 318 at 5-12), his testimony would likely have

assisted the prosecution significantly.  Thus, there is a reasonable probability that the Government would not have withdrawn its offer.  It is also reasonably probable that the Court would have accepted Contreras's guilty plea, and the terms of the offer (including the dismissal of, at a minimum, Counts 6 and 7), even if the Court decided to impose a sentence in excess of 10 years.

In *Lafler v. Cooper,* the Supreme Court appears to have dealt with the government-presentation and court-acceptance factors by noting that guilty pleas are presented and accepted, far more often than not.  *Lafler*, 566 U.S. 156, 170 ("Ninety-seven percent of federal convictions and ninety-four percent of state convictions are the result of guilty pleas.  *See Frye, ante*, at 1386, 132 S.Ct. 1399."). In relevant part, the Supreme Court also stated as follows:

> [Lafler] maintains that, absent ineffective counsel, he would have accepted a plea offer for a sentence the prosecution evidently deemed consistent with the sound administration of criminal justice.  The favorable sentence that eluded the defendant in the criminal proceeding appears to be the sentence he or others in his position would have received in the ordinary course, absent the failings of counsel.  *See* Bibas, *Regulating the Plea–Bargaining Market: From Caveat Emptor to Consumer Protection*, 99 Cal. L.Rev. 1117, 1138 (2011) ("The expected post-trial sentence is imposed in only a few percent of cases.  It is like the sticker price for cars: only an ignorant, ill-advised consumer would view full price as the norm and anything less a bargain"); *see also Frye, ante*, at 1386 – 1387, 132 S.Ct. 1399.  If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it.  If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence. . . .

*****

As to prejudice, [*Lafler*] has shown that but for counsel's deficient performance there is a reasonable probability he and the trial court

> would have accepted the guilty plea.  *See* [*Cooper v. Lafler*], 376
> Fed.Appx., at 571–572.  In addition, as a result of not accepting the
> plea and being convicted at trial, respondent received a minimum
> sentence 3 & half; times greater than he would have received under
> the plea.  The standard for ineffective assistance under Strickland has
> thus been satisfied.

*Lafler*, 566 U.S. 156, 167–68, 174; *see also Woods v. State*, 48 N.E.3d 374, 381–83

("The *Lafler* decision is silent regarding the defendant's burden to show that the

trial court would have accepted the proposed plea agreement.  Thus, to the extent

*Frye* imposes such a burden, there is no discussion of any evidence in support of

that showing in *Lafler*, which was handed down the same day as *Frye*.").

The showing made in Contreras's case here is no less than the showing made

in *Lafler*.  Consequently, the undersigned finds that Contreras has satisfied the

four-factor *Lafler* test.  In sum, the undersigned finds that Contreras has

demonstrated, by a preponderance of the evidence, that, but for Warner's

ineffectiveness, a reasonable probability existed that: (1) Contreras would have

accepted the Government's plea offer; (2) the plea offer would have been presented

to the Court; (3) the Court would have accepted the terms of the offer; and, (4) "the

conviction or sentence, or both, under the offer's terms would have been less severe

than under the judgment and sentence that in fact were imposed."  *Lafler*, 566 U.S.

156, 164.  It is, therefore, recommended that the Court grant Contreras's request for

relief pursuant to his first claim and provide him with a remedy consistent with the

Supreme Court's guidance in *Lafler v. Cooper*.  *See Lafler*, 566 U.S. 156, 170-175

(providing sentencing courts guidance regarding "the question of what constitutes

an appropriate remedy.").

In the alternative, because this is a close case, it is recommended that the Court conduct an evidentiary hearing so that it may make its own credibility assessments. The Court, having conducted Contreras's trial and sentencing, is in a superior position to assess the credibility of Warner and Contreras's allegations in this case. The Court is also in a better position to judge whether a reasonable probability existed with respect to whether it would have accepted the terms of the Government's offer, and imposed a sentence upon Contreras less severe than the sentence he is currently serving. Again, should the Court conclude that Contreras is entitled to relief, the Supreme Court's opinion in *Lafler v. Cooper* provides sentencing courts guidance regarding how to fashion a remedy. *See Lafler*, 566 U.S. 156, 170-175.

## V. Recommendation

For the foregoing reasons, it is recommended that the Court: (1) construe the Government's Amended Motion as a combined motion to dismiss and motion for summary judgment; (2) grant the Government's Amended Motion to the extent that it seeks dismissal of Contreras's second claim; (3) deny the Government's Amended Motion to the extent that it seeks dismissal of Contreras's first claim; and (4) grant Contreras's request for relief pursuant to his first claim and provide him with a remedy consistent with the Supreme Court's guidance in *Lafler v. Cooper*. *See Lafler*, 566 U.S. 156, 170-175 (providing sentencing courts guidance regarding "the question of what constitutes an appropriate remedy."). In the alternative, it is

recommended that the Court conduct its own evidentiary hearing and proceed pursuant to *Lafler's* guidance if the Court finds Contreras entitled to relief.

## VI.  Notice to Parties

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

Signed on this 20th day of September, 2017.

_____
**Ignacio Torteya, III**
**United States Magistrate Judge**